**CHAMBERS et al. v. DISTRICT OF COLUMBIA.**

**No. 1038.**

Municipal Court of Appeals
District of Columbia.

Argued March 24, 1952.

Decided June 12, 1952.

---

Harry E. Taylor, Jr., Washington, D. C. (Leonard A. Block, Washington, D. C., on the brief), for appellants.

Edward A. Beard, Assistant Corp. Counsel, Washington, D. C. (Vernon E. West, Corp. Counsel, and Chester H. Gray, Principal Assistant Corp. Counsel, Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and QUINN, Associate Judges.

HOOD, Associate Judge.

Appellants were convicted of eighteen separate violations of wage Order No. 7 of the Minimum Wage and Industrial Safety Board. This appeal challenges the validity of that wage order.[1]

The minimum wage law [2] established the Minimum Wage Board [3] and authorized it "to investigate and ascertain the wages of women and minors in the different occupations in which they are employed," and to ascertain and declare, in the manner thereafter provided, "Standards of minimum wages for women in any occupation * * *, and what wages are inadequate to supply the necessary cost of living to any such women workers to maintain them in good health and to protect their morals." The law further provided that, "if, after investigation, the Board is of opinion that any substantial number of women workers in any occupation are receiving wages inadequate to supply them with the necessary cost of living and maintain them in health and protect their morals," the Board may call and convene a conference composed of "not more than three representatives of the employers in such occupation, of an equal number of representatives of the employees in such occupation, of not more than three disinterested persons representing the public, and of one or more members of the Board." This conference was authorized to make "recommendations" as to standards of minimum wages in the occupation under inquiry and the Board was authorized to approve or disapprove such recommendations. If the Board approved, then a public hearing was authorized and after such hearing the Board was authorized in its discretion to make an or-

1. In Chambers v. District of Columbia, D. C.Mun.App., 80 A.2d 397, we dismissed this appeal, but our ruling was reversed and the case remanded to us for a hearing on the merits. Chambers v. District of Columbia, D.C.Cir., 194 F.2d 336.

2. Code 1940, 36–401 et seq.

3. The Board's name and functions were later enlarged to include administration of the industrial safety act. Code 1940, Supp. VII, Title 36, §§ 401, 402, 431 et seq. For a history of the minimum wage law see our opinion in Jawish v. Morlet, D.C.Mun.App., 86 A.2d 96.

der adopting such recommendations and carrying them into effect, "requiring all employers in the occupation affected thereby to observe and comply with such order."

In 1938 and 1939 the Board issued six wage orders bearing Nos. 3 to 8, inclusive. Order No. 3 applied to "Retail Trade," No. 4 to "Public Housekeeping Occupation," No. 5 to "Laundry, Dry Cleaning, and Dyeing Industry," No. 6 to "Beauty Culture Occupation," No. 8 to "Manufacturing and Wholesaling Occupations." Order No. 7, the order under consideration, when first made effective on March 13, 1939, was entitled "Office and Previously Unclassified Occupations Minimum Wage Order" and defined the workers covered by it to be "all women and minors engaged in office and previously unclassified occupations (manufacturing and wholesaling excluded)." [4] The workers were put under three classifications with separate wage rates for each class. These classes were:

"a. Stenographers, bookkeepers, typists, clerks, cashiers, checkers, professional's assistants and attendants, laboratory mechanics and technicians, messengers, ushers, telegraph and telephone operators, and all similar workers.

"b. Elevator operators.

"c. Maids and cleaners and all similar workers."

A revised wage Order No. 7 was made effective April 25, 1949. The revised order was entitled "Office and Miscellaneous Occupations Minimum Wage Order," and stated that " 'Office and Miscellaneous Occupations' include all occupations in or for establishments not covered by any other wage order issued by the District of Columbia Minimum Wage and Industrial Safety Board. These occupations include, but are not limited to, such work as is performed by general office clerks, stenographers, typists, bookkeepers, cashiers, various office machine operators, office boys and girls, ushers, messengers, maids, cleaners, elevator operators, janitors, telephone and switchboard operators, teletype operators, receptionists, library workers, teachers, dental assistants, medical assistants and technicians, and laboratory helpers." The employees under this order were likewise put in three classifications with separate wage rates for each. Such classifications were (a) all employees except those listed in subsections (b) and (c) below, (b) elevator operators and janitors, (c) maids and cleaners.

At the trial there was evidence that three women employees of appellants received less than the minimum wage rate fixed by wage Order No. 7. The duties of these women were not definitely described in the record. They worked from 10:00 p. m. to 7:00 or 8:00 a. m. at the funeral establishments conducted by appellants and answered the telephone and relayed calls when necessary. They also answered the door and received late callers. They were furnished beds and were able to sleep a considerable portion of the time they were on duty.

■ The sole contention made on this appeal is that the minimum wage board lacked authority to issue wage Order No. 7 covering an unlimited number of occupations. We think it is evident that the minimum wage law contemplated the issuance of orders on an occupational basis. This purpose is made clear by the authority given the Board to investigate wages "in the different occupations," and if investigation discloses any substantial number of women "in any occupation" are receiving inadequate wages, to call a conference of employers and employees "in such occupation," to receive recommendations as to wages "in the occupation under inquiry," and to issue an order and require compliance by the employers "in the occupation affected thereby."

The Board seemingly has recognized that its wage orders are necessarily based on occupational classifications and has entitled each of its orders as occupation orders.[5] Nevertheless in Order No. 7 the Board has

---

4. Apparently Order No. 8 relating to manufacturing and wholesaling was then in preparation. It became effective about three months later.

5. During the conference on revision of wage Order No. 7, Miss Allgood, executive secretary of the Board, made the following statement: "I think that look-

grouped under one order numerous diverse and unrelated occupations. Order No. 7 in its original form specifically stated that it included all "previously unclassified occupations" and in its revised form states that it includes "all occupations in or for establishments not covered by any other wage order."

We think it is clear that this was a catch-all order and was so intended. In express terms it covers all occupations not previously covered in any other wage order and this appears to be the official view of the Board. In its annual report of 1945 the Board stated: "The six wage orders issued under this law cover all women and minors in private industry." In its 1946 annual report the Board stated: "The sixth of the Board's occupational wage orders became effective in 1939. Since that time women and minors in all occupations except domestic service have been covered by specific minimum rates." And in its 1949 annual report the Board, referring to revised Order No. 7, said: "This occupation includes all women and minors employed in private office and miscellaneous occupations, not included in any of the other five orders." We think it is beyond doubt that Order No. 7 was intended to, and by its express wording does, cover all women workers not included in the other wage orders.

There is thus presented the question of the validity of a catch-all wage order. Somewhat similar questions have arisen in two other jurisdictions. In Minnesota the statute, M.S.A. § 177.01 et seq., gave the Industrial Commission power to fix minimum wages of women "in any occupation" in the state. The Commission issued a general or blanket order applying to "any occupation" and such order was held valid. In upholding its validity the court said:

"The commission might more properly have investigated one occupation at a time, but there could be no fatal objection to its investigating all occu-

pations together and to its making one order applying to 'each and every occupation,' provided always that it found as a fact that 'more than one-sixth of the women and more than one-sixth of the minors employed in the state *in each and every occupation* were receiving less than a living wage of the time' (Italics supplied), as the testimony of Commissioner Williams shows was done before the adoption of Order No. 13."

Tepel v. Sima, 213 Minn. 526, 7 N.W. 2d 532, 535. See also Martin v. Wolfson, 218 Minn. 557, 16 N.W.2d 884.

In California the statute, Labor Code, § 1171 et seq., imposed the duty on the Industrial Welfare Commission to ascertain the wages paid women in the "various occupations, trades, and industries" and if investigation showed inadequate wages "in any occupation, trade, or industry," after a conference and public hearing, to fix a minimum wage "in any occupation, trade, or industry." The Commission, after issuing special orders for various industries, issued an order applying to "any unclassified occupation." In holding this order invalid, the court said:

"From all these provisions we conclude that by the statute the commission was required to consider and deal with each separate industry separately, and that a blanket order applicable to unspecified, unsegregated industries, linked together merely for the purposes of the order, was not authorized. The order must specify the minimum wage for '*the* occupation in *question*', and notice of it must be sent to each employer in '*the* occupation *in question*'. Before making such order the commission must give notice of a hearing, the purpose of which hearing would be to fix a minimum wage 'in any occupation, trade or industry'. The wage

ing into the minimum wage legislation you will find that in the main it is tied up with occupations. It has always been interpreted that since the minimum wage law talks in terms of occupations we deal

on an occupational basis. That is one of the reasons why, in revising these orders we have elaborated on the word occupations." Conference stenographic transcript, November 10, 1948, page 31.

board provided for in section 5 must contain representatives 'in *the* occupation, trade or industry *in question*'; and without deciding that the appointment of such a board was a necessary prerequisite of an order fixing minimum wages we can see that at least the statute contemplated such board as a possibility in every case. Manifestly these provisions could not be complied with unless there were some particular occupation, etc. 'in question', that is, under investigation, in each case. Of course, we do not mean to say that in making orders a separate document must be written for each industry. No doubt, after proper investigation and consideration separately of several industries the commission might write its orders in regard thereto in one document.

"We do not intend by what we have just said to draw any hard and fast line setting limits on what might be regarded as a single industry or occupation and dealt with as such by the Industrial Welfare Commission. Undoubtedly that commission had a considerable discretion in that respect, and its acts in treating somewhat differing forms of business activity as in reality allied and constituting a single industry or occupation, or in segregating a general industry into smaller parts for separate consideration, must be upheld so long as a substantial and reasonable basis therefor appears; but it could not, under the law as written, yoke together for consideration industries belonging to entirely different genera. * * *

\* \* \* \* \* \*

"Order No. 10A, on which this prosecution is based, manifestly is not such an order as is authorized by the statute. By its terms it purports to fix the mimimum wage for women and minors 'in any unclassified occupation,' and defines the terms 'unclassified occupations' to mean 'all employment not classified under the mercantile, manufacturing, millinery, hotel and restaurant, laundry and dry cleaning, fruit and vegetable canning, fruit and vegetable packing, fish canning, and telephone and telegraph industries, office or professional occupations, domestic labor, or the harvesting, curing or drying of any variety of fruit or vegetables, and the cracking and sorting of nuts.' No particular industry is here 'in question', or is affected by this order. It is plainly intended to be a catchall for all sorts of industries not among those described, no matter how diverse in character or location such industries might be, or what different matters might be deserving of consideration in fixing the minimum wage. It is no better in principle than would be an omnibus order covering all industries. The above mentioned requirements of the statute could not be complied with in connection with such an order, and it must be regarded as beyond the power of the commission." People v. Johnson, 42 Cal.App.Supp.2d 827, 109 P.2d 770, 772, 773.

The California case is more in point with our case than the Minnesota case. Assuming, but not deciding, that under our law one general order applying to all occupations could have been validly passed after investigation of each and every occupation, the fact is that the wage Board did not pass one general order, but, like the California commission, after issuing a number of orders relating to separate occupations, passed an order designed to cover all unclassified or miscellaneous occupations. We agree with the California court that the Board may use its discretion in the classification of occupations so long as there is a reasonable basis for such classification, but a lumping together of all unclassified or miscellaneous occupations as one occupation is not a reasonable classification. We see no common or related ground for grouping together under one occupation teachers and typists, dental assistants and ushers, bookkeepers and janitors. They have no common or related duties and are not employed in common or related industries, trades, busi-

nesses or professions.[6] The occupational basis for the order contemplated by the law is here ignored. It is not an occupational order but a miscellaneous catch-all order designed to cover all known and unknown occupations not otherwise covered. It is our opinion that Wage Order No. 7 is too broad in its coverage and is invalid.

Reversed.

QUINN, Associate Judge (dissenting).

I am unable to agree with the majority's view that this particular wage order is invalid because it does not cover any particular occupation and is therefore a catch-all wage order. I do, however, agree that the intent of the organic act is to prescribe wage orders for the different occupations and that the act intended that the orders were to cover specific occupations, and I believe that Wage Order No. 7 is such an order as was contemplated by Congress and is clearly within the statute.

This appeal requires determination of the power of the District of Columbia Minimum Wage and Industrial Safety Board, under the Minimum Wage Act, to establish minimum wage standards in "Office and Miscellaneous Occupations" as set forth in the Board's Wage Order No. 7, effective April 25, 1949.

After detailed consideration, the District minimum wage law was passed in 1918.[7] The difficult and wide scope of the problems raised by the conditions existing in industries and occupations employing women in the District of Columbia was obvious to

Congress at the time. Congress sought to set out its purpose and the range of its action in section 9 of the act, (Code 1940, 36–408) which provides that the function of the Board is "to ascertain and declare, * * * (a) Standards of minimum wages for women in any occupation within the District of Columbia, and what wages are inadequate to supply the necessary cost of living to any such women workers to maintain them in good health and to protect their morals * * *."

The statute created a Minimum Wage Board whose function it was to make regulations in order to achieve the purposes of the act. This Board was empowered to investigate the different occupations employing women in the District and thereby ascertain the wages (for women in any occupation within the District) that "are inadequate to supply the necessary cost of living to any such women workers to maintain them in good health and to protect their morals." The act provides a manner by which the Board may call a conference to consider the subject of the Board's investigation and such conference may make recommendations to the Board "as to standards of minimum wages for women workers in the occupation under inquiry." The Board then holds a public hearing on the subject occupation after which it makes the necessary order to carry these recommendations into effect. The act goes on to give these orders of the Board the effect of law and prescribes the penalty for their violation.

After promulgating its various orders over the years, the Board began a series

---

6. The Board itself recognized the wide scope of Order No. 7. In its annual report for 1948 it said:

"Inasmuch as the employers and employees affected by the wage order for office and miscellaneous occupations include all those who are not subject to one of the Board's other five industrial orders, there is considerable variety both among the establishments and in the occupations covered by the order. It is estimated that more than 40 types of businesses and professions are subject to the order, including, among others, utili-

ties, theatres, banks, real estate, insurance, and professional offices. Likewise, a number of occupations have been grouped for the purposes of the order, though it may be said that the women and minors protected by it are, in the main, white-collar workers.

"Information concerning earnings and hours in these varied establishments was gathered on a sampling basis."

7. The Congressional hearings and debates are contained in the Congressional Record, 65th Cong., 2d Sess., Vol. LVI.

of conferences, as prescribed by the act, with a view to revising the existing wage orders in order that the economic changes occurring since their original promulgation might be reflected in more up to date wage orders. In 1948 the Board began its work on the revision of the wage order here in question, i. e., Wage Order No. 7. The original Wage Order No. 7 which was published in 1939 was entitled "Office and Previously Unclassified Occupations." During the conference held to revise this order it was decided to change this title and to rename it under its present title of "Office and Miscellaneous Occupations."

This conference considered the material submitted to it on the occupation under inquiry and reported its findings and recommendations to the Board. As further provided in the act, the Board published the necessary notices and held a public hearing on these recommendations. Thereafter the Board adopted these recommendations and published the revised Order No. 7, "Office and Miscellaneous Occupations Minimum Wage Order," requiring as set forth in the act "all employers in the occupation affected thereby to observe and comply with such order." The pertinent portions of this order which are now before us are as follows:

"1. Definitions

"(a) Office and miscellaneous occupations: 'Office and Miscellaneous Occupations' include all occupations in or for establishments not covered by any other wage order issued by the District of Columbia Minimum Wage and Industrial Safety Board. These occupations include, but are not limited to, such work as is performed by general office clerks, stenographers, typists, bookkeepers, cashiers, various office machine operators, office boys and girls, ushers, messengers, maids, cleaners, elevator operators, janitors, telephone and switchboard operators, teletype operators, receptionists, library workers, teachers, dental assistants, medical assistants and technicians, and laboratory helpers.

"Excluded from this wage order are all employers and employees covered by other wage orders issued by the District of Columbia Minimum Wage and Industrial Safety Board, [naming the five other wage orders.]

\* \* \* \* \* \*

"4. Records. [Setting forth the material required to be recorded.]

\* \* \* \* \* \*

"Such records shall be kept on file for at least three years after the entry of the record and shall be open to inspection by the members and any duly authorized representative of the District of Columbia Minimum Wage and Industrial Safety Board."

One copy of this order was sent to and posted in the premises of the appellant. A short time later a representative of the Board made an investigation of appellants' place of business and requested a copy of the records which would show the hours worked by the female employees, which records were required to be kept by Wage Order No. 7, as well as the act. Appellants admitted that they did not keep such records, because, they contended, Wage Order No. 7 did not apply to them, and as they interpreted it "\* \* \* Wage Order No. 7 calls for very skilled workers, of which we do not have the type of skills called for." Further investigation revealed the three women cited in the information to be working under conditions in violation of Wage Order No. 7, in that they were being paid less than the minimum wage provided for as hereinbefore stated. It was upon these violations that appellants were tried and convicted.

The ultimate question is, therefore, whether the term *occupation* as it is used in the organic act is sufficiently broad enough to cover the office and miscellaneous *occupations sought to be included in Wage* Order No. 7.

The investigatory powers of the Board extend to the *different occupations* employing women in the District of Columbia, and the extent of the Board's power was to ascertain and declare the standards of mini-

mum wages for women in *any occupation* in the District of Columbia. In order to determine the meaning of these provisions with regard to Wage Order No. 7, we must look to the definition of the word *"occupation"* as given in the act itself. The term is there defined to include "a *business, industry, trade,* or *branch* thereof, but shall not include domestic service." (Emphasis supplied.) Eliminating the last phrase as inapplicable here, we turn to the meaning of the words specifically used by the statute. *Business* in its generally accepted meaning conveys the idea of an employment habitually engaged in especially for livelihood or gain or a commercial or industrial establishment or enterprise.[8] *Industry* is any department or branch of art, occupation, or business, especially one which employs much labor and capital and is a distinct branch of trade.[9] *Trade* is the business one practices or the work in which one engages regularly such as one's calling, gainful employment, or means of livelihood.[10] The underlying connotation running through all of these terms is that occupation is employment by which one gains his livelihood, without necessarily classifying that employment into a specific category. The use of the additional words *"or branch thereof"* would certainly seem to indicate an even broader meaning than this.

In my view of the term *occupation* in the scope above described, it is manifestly clear that a classification such as "white-collar workers" is an occupation within this meaning. I also agree with the majority's proposition that the Board may use its discretion in the classification of occupations so long as there is a reasonable basis for such classification. I feel, however, that there is a reasonable basis and a sound foundation in fact for the classification used in this instance, i. e., these women workers had a sufficient common denominator to be classified as "white-collar workers."

The conference called to consider the *white-collar worker*[11] (revision of Wage Order No. 7) was a valid conference within the meaning of the act. The three employer representatives (these men being respectively a man in the banking business, one in the insurance business, and one in the public utility business) were representatives in the true sense of the word when we consider the occupation to be that of "white-collar workers." It was not necessary, nor was it possible, to have included within the three employer representatives an employer of each separate type of establishment or business within the occupation of "white-collar workers."

The term any *branch* of a business, industry, or trade is wide enough to include those incidental workers who could not possibly be accurately described in such an order that must be flexible to some extent. To hold otherwise would be to place an absurd interpretation on the entire act, for it would mean that a minimum wage could only be created for the industry as a whole but would not cover the various elements and connected branches.

I am compelled to draw a distinction between this case and the California case upon which the majority places so much reliance. The wage order in that case was wholly different from the one here in question and consequently the reasoning in that case is based upon a different premise than that which faces us in the present case. Wage Order 10A, "Unskilled and Unclassified Occupations," which was promulgated by the Industrial Welfare Commission of

---

8. Webster's New International Dictionary, 2d Ed., Unabridged.

9. Id.

10. Id.

11. The conference used the phrase "white-collar workers" to refer to the group of miscellaneous workers intended to be covered by the order and whose interests were being considered by the conference. As it was stated by the Chairman of the

Board at the public hearing, "* * * all the women employees in this category have one thing in common, and that is that in the main they are all doing white-collar work." Transcript of Proceedings of the Minimum Wage and Industrial Safety Board—In the matter of: Revision of the Office and Miscellaneous Occupations Wage Order. February 10, 1949.

the State of California, does not attempt in any affirmative way to define the occupation or the specific type of women workers over which the order is supposed to operate. The only attempt at definition in that order is a negative one which states that "The term 'unclassified occupations' shall include all employment not classified under the mercantile, manufacturing, laundry, or canning industries, office or professional occupations, fruit and vegetables packing establishments, telephone or telegraph establishments, hotels or restaurants, domestic labor or the skilled trades." On the other hand, the definition used in our Wage Order No. 7 affirmatively defines the precise type of worker this order covers. While it is true that the phrase "but are not limited to" is used in this definition, I do not feel that this phrase is sufficient to invalidate the entire definition.

The Court in the Johnson case found that in addition to the defects in the order the statute had not been complied with in regard to investigating the occupation in question and the statutory notice required to be given. As I have pointed out above, the Minimum Wage Board followed the requirements of our statute in investigating the occupation under inquiry and held a conference as prescribed by the act.

Since I construe the wage order in question to be a valid one, I need not decide if the appellants' employees were within one of the occupations covered by the order, for this is a question of fact to be determined by the Board and their finding is conclusive upon the court. D.C.Code 1940, 36–416.

The occupation intended to be covered by the revised Wage Order No. 7 was that of the white-collar workers. That this group may be considered as an occupation is shown by the reasoning above. This order was promulgated in accordance with the requirements of the act, and under this view there is nothing in this order that renders it void as being beyond the scope of the authority of the Board.

In my opinion the Board did follow the procedure as set forth in the act and Wage Order No. 7 is consequently a valid order. The judgment should be affirmed.